```
                                                            USDC SDNY
                                                            DOCUMENT
UNITED STATES DISTRICT COURT                                ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                               DOC #: _____
------------------------------------------------------------- X    DATE FILED: 3/19/15
                                                        :
136 FIELD POINT HOLDING                                 :
COMPANY LLC,                                            :
                                         Plaintiff,     :      1:13-cv-6285-GHW
                                                        :
                       -v -                             :      MEMORANDUM OPINION
                                                        :            AND ORDER
INVAR INTERNATIONAL                                     :
HOLDING, INC.,                                          :
                                         Defendant.     :
                                                        :
------------------------------------------------------------- X
```

GREGORY H. WOODS, District Judge:

## I.   INTRODUCTION

Alexander Razinski, and his wife, Tanya Razinski, hold themselves out as sophisticated multi-millionaires, and live in a luxury, waterfront mansion in Greenwich, CT. But it is rented. The Razinskis promised to leave the property at the end of the lease's term. But they did not leave. The Razinskis promised to pay a hold-over payment if they occupied the house beyond the lease term. But they have not paid. Invar International Holding, Inc., wholly-owned by the Razinskis and their daughter, "absolutely and unconditionally" promised to pay if the Razinskis failed to do so. But it refused to pay. Invar argues that, for it, the language of its absolute and unconditional obligation to pay "under any and all circumstances" is not clear enough to require it to comply with its promise. Undeterred by the Razinskis' express representation that the agreements providing for the hold-over payment were enforceable against them, Invar argues that it need not pay under the guaranty because the hold-over payment is an unenforceable penalty. But because the guaranty clearly requires payment regardless of the enforceability of the guaranteed obligations, Invar must pay as promised. For the reasons set forth below, the Court grants summary judgment for the plaintiff.

II.     BACKGROUND

Invar International Holding, Inc. ("Invar" or "Defendant") is a Virginia corporation with its principal place of business in New York. Defendant's 56.1 Statement ("D56.1 Statement") at ¶ 11. Invar holds itself out as a sophisticated company. It invests in and develops energy infrastructure projects around the world. *Id.* It provides management and consulting services for international business transactions, specializing in the energy sector and project finance. *Id.* Invar is wholly owned by Alexander Razinski, his wife, Tanya Razinski, and their daughter, Xenia Razinski. Guaranty Agreement, dated as of May 17, 2012 (the "Guaranty") at ¶ B.

The Razinskis reside in a waterfront mansion located at 136 Field Point Circle in Greenwich, Connecticut. The house is owned by the plaintiff in this lawsuit, 136 Field Point Holding Company LLC ("Plaintiff"). The Plaintiff acquired the property in May 2012 pursuant to a series of financial arrangements involving the Razinskis, Invar and the prior owner of the property. The terms of the agreement between the Razinskis, Invar and the Plaintiff were laid out in a Master Agreement which was executed by the parties on May 17, 2012. Master Agreement, dated as of May 17, 2012 (the Master Agreement"). D56.1 at ¶ 11.

Under the terms of the Master Agreement, Mr. Razinski transferred an option to acquire the property to the Plaintiff. Master Agreement § 1.1. The Master Agreement required the Plaintiff to pay Mr. Razinski $2,548,181.86 million to acquire the option. *Id.* The agreement specified that those funds could only be used in a specified manner: to pay the Plaintiff's legal fees for the transaction, to pay $110,000 in property taxes on the property, with the remainder to be used by the Razinskis to benefit Invar by paying $800,000 to fund an arbitration proceeding then being pursued by Invar and the remainder to be used for Invar's working capital.

One of the transactions contemplated by the Master Agreement was a lease of the property to the Razinskis. The Plaintiff and the Razinskis entered into a Residential Lease (the "Lease"),

dated May 17, 2012.  Affidavit of Nicholas Prouty, Docket No. 23 ("Prouty Affidavit"), Exhibit B. The Razinskis were leased the property for a term that ended on June 30, 2013, subject to a 6 month extension.  Lease § 1.  At the end of the lease term, the Razinskis were required to leave the property.  That obligation was clearly articulated in both the Master Agreement and the Lease.  In the Master Agreement, the Razinskis represent that "they are sophisticated parties with significant resources that would enable them to obtain other accommodations immediately upon end of the Rental Term . . . and, accordingly, they each irrevocably waive any holdover or other right to reside in or otherwise occupy the Property at any point after the end of the Rental Term . . . and each agrees to vacate the property immediately at the end of the Rental Term."  Master Agreement § 2.3. The Lease contains equivalent express representations and commitments to vacate the property at the end of the lease term.  Lease § 8(b).

In both the Master Agreement and the Lease, the Razinskis agreed to pay a hold-over payment of $1,000,000 in the event that they held over after the lease term.  Master Agreement § 2.3; Lease § 8(c).  The Razinskis stated expressly that "their failure to vacate the Property immediately . . . would have a material adverse effect on the Purchaser's ability to sell or lease the Property . . . and, accordingly, any such failure will entitle Purchaser to receive an immediate cash payment from the Razinskis of $1,000,000 . . . ."  Master Agreement § 2.3; Lease § 8(c).

Invar entered into a guaranty of all of the Razinskis' obligations under the Master Agreement and the Lease.  Guaranty Agreement, dated May 17, 2012 (the "Guaranty") § 1.1.  Prouty Affidavit, Exhibit D.  The Guaranty states:

> The Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Purchaser . . . the full, complete and timely payment, performance and satisfaction of each and every one of the liabilities and obligations of either or both of the Razinskis under the Transaction Documents.  It is expressly understood and agreed that this is a continuing guarantee and that the obligations of the Guarantor under this Guaranty is and shall be absolute under any and all circumstances, *without regard to the validity, regularity or enforceability of the Transaction Documents . . . .*

3

Guaranty § 1.1 (emphasis added).  The Guaranty provides the Plaintiff the right to collect against Invar without first proceeding against the Razinskis.  Section 1.6 of the Guaranty reads:

> Upon any breach of or default under any of the Transaction Documents, Purchaser may . . . proceed directly and at once . . . against the Guarantor to collect and recover the full amount of any of the Obligations . . . without being required to seek or exhaust its remedies for breach or default by, or otherwise proceed against, either or both of the Razinskis . . . .

Invar was provided with all of the transaction documents, and expressly represented that the Guaranty was fully enforceable against it.  Guaranty §§ 1.1, 2.1(a).  Moreover, Invar acknowledged in the Guaranty that it had been represented by counsel of its choosing, and that "the language in this Guaranty shall be conclusively deemed to be the language chosen by the Parties to express their mutual intent . . . ."  Guaranty § 5.12.

In the Master Agreement, the Razinskis represented that each of the "Transaction Documents"—defined to include the Master Agreement, the Lease, and the Guaranty—constituted "a valid, legally binding and enforceable obligation of the Razinskis and Invar, enforceable against the Razinskis and Invar in accordance with its terms."  Master Agreement § 9.2(a).  Both Razinskis signed the Master Agreement in their personal capacities, just as both signed the Guaranty as officers of Invar.  The Razinskis also represented that their, and Invar's, entry into and performance of the Transaction Documents would not "violate any Law applicable to the Razinskis, Invar Holdings or any of their respective assets or properties."  Master Agreement §9.2(b).   Both the Guaranty and the Master Agreement are governed by New York law.

Of course—since there would be no litigation now otherwise—the Razinskis did not depart the property at the end of the lease term.  They remain in the property today, long after the maximum one year and six month duration of the lease term.  Nor have the Razinskis paid the hold-over payment of $1,000,000, despite the Plaintiff's demand that they do so.  D56.1 ¶ 10.

Undeterred by the fact that they represented that the Master Agreement and Lease were enforceable against them, the Razinskis are claiming that the hold-over provision is not, in fact, enforceable against them. Despite the fact that the Guaranty contains Invar's "absolute and unconditional" obligation to guaranty "each and every" obligation of the Razinskis under the Lease and Master Agreement, Invar has failed to pay.

The record in this case does not explain why the Razinskis, who hold themselves out as multi-millionaires and sophisticated financiers, have not acquired the property through the exercise of their call option under the Master Agreement. Master Agreement § 3.1. This Court declines to speculate regarding the Razinskis' financial capacity or motives. What is clear is that, rather than moving out of the property at the end of the lease term, the Razinskis have embarked on an extensive period of litigation in state court, which has had the effect of preventing their eviction from the property. In the state court litigation, the Razinskis have claimed, among other things, that the hold-over payment provision is an unenforceable penalty, that the home was conveyed to the Plaintiff as security for a loan, and that the Razinskis have an equity interest in the property, not merely a leasehold interest. Joint Letter to the Court, dated October 7, 2014, Docket No. 52. On October 28, 2014, the Supreme Court of the State of New York, New York County, ruled that the Razinskis do not have an equitable interest in the property. Affidavit of Mitchell J. Baker, Docket No. 57, Exhibit 1. The New York Supreme Court ordered that the Razinskis be evicted from the property. *Id.* That court has not yet ruled on the question of whether the hold-over payment is an unenforceable penalty.

This Court expresses no view as to the merits of the Razinskis' on-going litigation in state court. However, the Court has a clear view of the merit of Invar's contention in this case that it is not required to pay the hold-over payment pursuant to its Guaranty—it has none. Invar clearly

promised to pay on its guaranty regardless of the validity or enforceability of the underlying obligations; it must do so.

### III.   PROCEDURAL HISTORY

The Plaintiff filed this case on September 6, 2013, seeking to enforce Invar's guarantee of the hold-over payment.  In response, Invar moved to stay the litigation, arguing that this case should be stayed to allow the state court action to proceed.  Judge Jed Rakoff granted Invar's request to stay this case on November 20, 2013.  The case was reassigned to the undersigned on April 8, 2014. Invar's requested stay delayed adjudication of Invar's obligations under the Guaranty for more than a year.

On November 12, 2014, the parties wrote the Court, informing it that the Supreme Court of the State of New York had ruled on the Razinskis' claims to hold an equity interest in the property. On November 13, 2014, the Court lifted the stay in this action.  The Plaintiff has moved for summary judgment to enforce Invar's payment obligations under the Guaranty.

### IV.   LEGAL STANDARD

The Plaintiff in this case is entitled to summary judgment on a claim if it can show that "there is no genuine dispute as to any material fact and that [defendant is] entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat a motion for summary judgment, the defendant "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice.  *Hicks v. Baines*, 593 F.3d 159, 166 (2d

Cir. 2010) (citations and internal quotations omitted). Nor will wholly implausible alleged facts or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (citing *Matsushita*, 475 U.S. at 585-86). The issue of fact must be genuine—plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). Rather, the Court must decide whether a rational juror could find in favor of the non-moving party. *Id.*

### V. DISCUSSION

At base, this is a very simple case. Invar entered into a Guaranty of the Razinskis' obligations under the Lease and the Master Agreement, including the $1,000,000 hold-over payment. Despite the fact that they specifically represented that the Lease and the Master Agreement were enforceable at the time that they entered into it, the Razinskis are currently litigating the enforceability of the hold-over payment in state court. Invar argues that it need not pay on the Guaranty because the hold-over payment under the Lease is unenforceable. It is irrelevant whether the primary obligation is unenforceable, however, because the Guaranty expressly provides that it is absolute and unconditional without regard to the enforceability of the Lease and the Master Agreement.

The language of the Guaranty in this case is absolute and unconditional. The Guaranty states that "The Guarantor hereby absolutely, unconditionally, and irrevocably guarantees . . . the

full, complete and timely payment . . . of each and every one of the liabilities and obligations of the Razinskis under the Transaction Documents." Guaranty at §1.1.

It is a clearly established principle that "[a]bsolute and unconditional guaranties . . . [can] preclude guarantors from asserting a broad range of defenses under New York law." *Compagnie Financiere de CIC et de L'Union Europeene v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 35 (2d Cir. 1999); *see also First N.Y. Bank for Bus. v. DeMarco*, 130 B.R. 650, 654 (S.D.N.Y. 1991) ("Absolute and unconditional guaranties . . . are consistently upheld by New York courts. Indeed, unconditional guaranties have been held to foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims.") (*quoted in Merrill Lynch*, 188 F.3d at 36).

The text of the Guaranty unambiguously requires payment under the Guaranty even if the guaranteed obligation itself is unenforceable. The Guarantor expressly agreed that "the obligations of the Guarantor under this Guaranty is and shall be absolute under any and all circumstances, *without regard to the validity . . . or enforceability of the Transaction Documents.*" Guaranty at §1.1 (emphasis added).

Invar does not argue that it did not understand the obligations that it undertook in the Guaranty. The Razinskis and Invar represented that they were sophisticated parties and that they had the benefit of counsel of their choice in the negotiation of the Guaranty and the other transaction documents. Master Agreement § 13.12. The Razinskis expressly represented that the transaction documents, including the Master Agreement, the Lease and the Guaranty, were enforceable in accordance with their terms. Master Agreement § 9.2. Invar and the Razinskis were represented by counsel in the transaction, including in the negotiation of the Guaranty. Master Agreement § 13.12; Guaranty § 5.12.

The principal legal rationale asserted to justify Invar's failure to perform its express obligations under the Guaranty is that the Guaranty "contains no express waiver of Invar's right to

8

assert defenses." Defendant's Supplemental Memorandum of Law in Opposition, Docket No. 61 ("Opposition") at 7. Invar argues that without those specific additional words, the Guaranty is ineffective.

In support of its argument, Invar points to cases in which courts enforced absolute and unconditional guarantees in the face of an argument that the guaranteed obligation was unenforceable. For example, the defendant points to the New York Court of Appeals' decision in *Citibank N.A. v. Plapinger*, 66 N.Y. 2d 90 (1985). In that case, as the Defendant points out, the guaranty that the Court of Appeals enforced in the face of a defense to the primary obligation "contained a broad waiver that was irrespective of any lack of validity of the subject loan agreement but also extended to 'any other circumstances which might otherwise constitute a defense to the guarantee.'" Opposition at 7. However, there is no language in *Plapinger*—or any of the other cases cited by the defendant—that suggests that an absolute and unconditional guaranty must contain those additional words to effectively waive defenses to performance under the primary obligation.

The Defendant's argument is akin to a dishonest child's claim that her fingers were crossed behind her back when she made a promise. As noted above, the Guaranty expressly states that it "is and shall be absolute under any and all circumstances, without regard to the validity . . . or enforceability of the Transaction Documents." Guaranty at §1.1. This language clearly and unambiguously requires Invar to make payment regardless of whether or not the primary obligation is enforceable ("without regard to the validity . . . or enforceability" of the primary obligation). The Guaranty need not contain an additional waiver of other defenses, since the express language of the Guaranty waives the defense that Invar asserts here—that the hold-over payment provisions in the Lease and Master Agreement are unenforceable.

Invar has raised two additional arguments that can most generously be described as insubstantial and unpersuasive. First, it argues that the Guaranty can only cover the obligations of

9

the Razinskis under the Lease, and that, since the obligations under the Lease are unenforceable, there can exist no obligations under the Guaranty. Opposition at 6. Invar cites to cases to construct this argument, but none of the cases stand for the proposition for which Invar cites them. If accepted, this circular argument would render all such absolute and unconditional guaranties meaningless. The Court has not found any support for the argument, and rejects it.

Second, for the first time at oral argument, Invar's counsel raised the argument that Section 5.9 of the Guaranty, entitled "Remedies" should be read to counteract any waiver of defenses provided in the Guaranty. Counsel pointed the Court to the language of the provision that reads "The Parties acknowledge that money damages would not be a sufficient remedy for any breach or threatened breach of this Guaranty and that irreparable harm would result if this Guaranty were not specifically enforced. Therefore, the rights and obligations of the Parties shall be enforceable by a decree of specific performance . . . without regard to the adequacy of any remedy at law. A Party's right to specific performance and injunctive relief shall be in addition to all other legal or equitable remedies available to such Party." Guaranty § 5.9. Invar argues that the reference to remedies in this section of the Guaranty is inconsistent with the argument that Invar waived any legal or equitable remedies in the Guaranty. Invar's argument completely ignores the context and plain meaning of Section 5.9. That section is evidently a description of the remedies available to the parties in the event of a breach of the Guaranty; it establishes the parties' agreement that equitable remedies are available in addition to money damages. It is not a constraint on the waivers of rights expressly provided for in the Guaranty itself. The waiver of any defense to payment under the Guaranty with regard to the enforceability or validity of the guaranteed obligations is clearly provided in the text of Section 1.1 of the Guaranty. The Court finds that this argument also lacks merit.

## VI.     CONCLUSION

The plaintiff's motion for summary judgment is granted.  Judgment is entered in favor of the plaintiff in the amount of $1,000,000.  The Clerk of Court is directed to enter judgment accordingly, terminate all pending motions, and close this case.

SO ORDERED.

Dated:  March 19, 2015
New York, New York

_____
GREGORY H. WOODS
United States District Judge